1 | J. JAMES LI (SBN: 202855)
2 | DAVID J. PEREZ (SBN 238136)
  | GREENBERG TRAURIG, LLP
3 | 1900 University Avenue, Fifth Floor
  | East Palo Alto, California 94303
  | Telephone: (650) 328-8500
4 | Facsimile: (650) 328-8508
  | E-mail: lij@gtlaw.com
5 |
  | Attorneys for Plaintiffs
6 | PEAK PERFORMANCE NUTRITION, LTD.,
  | WILLIAM E. WHEELER, Ph.D
7 |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| PEAK PERFORMANCE NUTRITION, a Nevada Domestic Corporation, and WILLIAM E. WHEELER, Ph.D., an individual, | Case No. CV-09-4933 AG (Shx) |
| | **PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANT KENNETH W. BYERS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** |
| Plaintiffs, | |
| v. | |
| MEDIA POWER, INC., a Maine corporation, KENNETH W. BYERS, an individual, and KEN WRIGHT, an individual, | **DATE:** May 3, 2010 **TIME:** 10:00 a.m. **ROOM:** 10D |
| Defendants. | |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     PRELIMINARY MATTER: NONCOMPLIANCE WITH LOCAL RULES ........................... 3

III.    STATEMENT OF FACTS ........................................................................................ 4

   A.   Byers Is Personally Involved in Media Power's Extensive Contacts with California ............... 4

   B.   Byers' Personal Involvement in Marketing GSP Products ........................................ 6

   C.   Facts Should Be Deemed Admitted Pursuant to Evidentiary Sanction Against Byers ............ 8

      1.   Byers' Various Companies Sold GSP and Byers Was Personally Involved
           in the GSP-Related Activities of these Companies ........................................... 8

      2.   MPDirect Is Media Power's Parent Company ............................................... 8

      3.   GSP and California Are Significant Sources of Income for Byers ......................... 9

IV.    ARGUMENT ...................................................................................................... 9

   A.   Byers Is Personally Involved in Media Power's Wrongdoings Related to California ............. 10

      1.   Byers Has Directed His Alleged Intentional Wrongdoings at California ............... 11

      2.   Byers Has Purposefully Availed Himself of the Protection of California
           law and the Privilege of Doing Business in California. ................................ 12

      3.   Byers' Reliance on the Corporate Shield Theory Is Unavailing ........................ 12

   B.   The Exercise of Jurisdiction over Byers is Reasonable. .......................................... 13

      4.   Extent of Byers' Interjection into California's Affairs .................................... 14

      5.   Burden on Byers of Defending in California ................................................ 14

      6.   Extent of Conflict with Sovereignty of Defendant's State .............................. 15

      7.   California's Interest in Adjudicating the Dispute .......................................... 15

      8.   Most Efficient Judicial Resolution of the Controversy .................................. 16

      9.   Importance of the Forum to Plaintiffs' Interest in Convenient and Effective Relief ......... 17

      10.  Existence of an Alternative Forum .......................................................... 17

   C.   The Central District Of California Is The Proper Venue To Litigate This Claim. ................. 17

   D.   Byers' Citations To Non-Existent Declaration Paragraphs Should Be
        Disregarded By This Court ..................................................................... 19

   E.   In the Alternative, Limited Discovery Should be Ordered For Determining Jurisdiction ....... 20

V.     CONCLUSION .................................................................................................. 20

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Core-Vent Corp. v. Nobel Industries AB,*
  11 F.3d 1482 (9th Cir. 1993) ................................................................ 14

4

*eMag Solutions, LLC v. Toda Kogyo Corp.,*
  2006 WL 3783548, *2 (N.D. Cal. 2006) .............................................. 20

5

*Gates Learjet Corp. v. Jensen,*
  743 F.2d 1325 (9th Cir. 1984) ........................................................ 16, 17

6

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,*
  328 F.3d 1122 (9th Cir. 2003) ........................................................ 13, 20

7

*International Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ................................................................ 9, 13, 14

8

*Keeton v. Hustler Magazine, Inc.,*
  465 U.S. 770 (1984) .............................................................................. 12

9

*Lake v. Lake,*
  817 F.2d 1416 (9th Cir. 1987) .............................................................. 10

10

11

*Laub v. U.S. Dept. of Interior,*
   342 F.3d 1080 (9th Cir. 2003) ............................................................ 20

12

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait,*
  757 F.2d 1058 (9th Cir. 1985) .............................................................. 14

13

*Panavision Intern., L.P. v. Toeppen,*
  141 F.3d 1316  (9th Cir. 1998) ............................................................ 14

14

*Roth v. Garcia Marquez,*
  942 F.2d 617 (9th Cir.1991) ................................................................ 13

15

16

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004) .......................................................... 10, 11

17

## STATE CASES

18

*Integral Development Corp. v. Weissenbach,*
  99 Cal. App. 4th 576 (2002) ........................................... 9, 13, 14, 16

19

*Taylor-Rush v. Multitech Corp.,*
  217 Cal. App. 3d 103 (1990) .......................................................... 12, 13

20

21

## FEDERAL STATUTES

22

28 U.S.C. § 1391(a) .................................................................................. 18

23

28 U.S.C. § 1391(b) .................................................................................. 18

24

28 U.S.C. § 1404(a) .................................................................................. 17

25

## STATE STATUTES

Cal. Code Civ. Proc. § 410.10 .................................................................. 9

26

27

28

PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANT BYERS' MOTION TO DISMISS

SV 346511841v1

Plaintiffs Peak Performance Nutrition ("PPN") and William E. Wheeler, Ph.D. ("Dr. Wheeler") (collectively "Peak") hereby oppose the Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer Venue ("Motion to Dismiss"), filed by Defendant Kenneth W. Byers ("Byers").

## I.    **INTRODUCTION**

Defendant Byers is the founder, President, and Chief Executive Officer of Defendant Media Power, Inc. ("Media Power").  As shown in Peak's companion Amended Opposition to Media Power's Motion to dismiss, Media Power has extensive contacts with California that are directly related to the marketing and distribution of the alleged infringing products, Gold Standard Protein ("GSP").  According to Dr. Wheeler, Byers was personally involved in the GSP project using Dr. Wheeler's right of publicity since 2003.  Thus, Byers's control and knowledge of Media Power's California activities alone related to GSP is sufficient for this Court to exercise personal jurisdiction over Byers.

Mr. Byers claims in his recent deposition that he is merely a "consultant" to Media Power.  This, however, is not what Media Power's own registration with the State of Maine says.  The 2008 registration explicitly identifies Byers as the "president and chief executive officer" of Media Power.  Chris Homer, Media Power's shareholder, Director, and designated witness, testified that it was his understanding that Byers has been Media Power's president and CEO since 2007.  Thus, Byers' attempt to distance himself from Media Power to escape jurisdiction must fail.

In fact, most of wrongdoings by Media Power at issue occurred after Byers had resumed his president position at Media Power.  The Media Power's direct mails to California residents, as shown by Gardner Declaration, were in April and June of 2008, after Byers had resumed his president and CEO position at Media Power.  Byers also personally registered several domain names related to GSP and Dr. Wheeler since 2007, including wheelerdiet.com, goldstandardprotein.com, and gspdiet.com.

Furthermore, Media Power is only one of several corporate vehicles controlled by Byers that sell GSP and infringe Dr. Wheeler's right of publicity.  One important company in this aspect is MPDirect, which is wholly owned by Byers and is a sister or parent company of Media Power.  MPDirect, as well as its SunTime division, directly receives GSP shipment from Big Train, the California manufacturer.  MPDirect also ships GSP directly to California residents.  MPDirect used to sell GSP directly through its website, mpdirect.com.  After Peak's filing of the lawsuit, MPDirect removed its website and set up an automatic routing of mpdirect.com users to drnewtons.com, a website owned by Media Power that sells GSP.  Byers has also registered other websites that sell GSP, including opamerica.com and oldtampabaytrading.com.

Thus, Byers is the only consistent element that threads together the various entities and websites that are engaged in marketing and selling GSP using Dr. Wheeler's name and images.  He has personally met Dr. Wheeler several times regarding the GSP project. He has visited California at least three times to attend Expo West, the natural product exhibition held annually in Anaheim, California.  He is instrumental in Media Power and other companies' marketing and sales of GSP, an intellectual property developed and manufactured in California by a California resident.  He controls a company (i.e., MPDirect) that directly receives from and ships to California the infringing products.  Therefore, Byers has directed his wrongdoings at California and has purposefully availed the benefit and protection of the California law.  The State of California indeed has personal jurisdiction over Byers.

The venue is also proper in this case because a substantial part of the events or omissions giving rise to the claim occurred in this District.  Much of the evidence resides in this District because the IP was created here, the infringing products have been made and shipped from here, payments for the products have been directed here, a significant portion of the customers of GSP are also located in California.

Byers' motion should be denied in its entirety.

/ / /

## II.   **PRELIMINARY MATTER: NONCOMPLIANCE WITH LOCAL RULES**

As Media Power did in its motion to dismiss co-pending with the instant motion, Byers has failed to comply with the meet and confer requirements of this Court's Local Rules, Civ. L.R. 7-3.  Declaration of J. James Li in Support of Opposition to Defendant Byers' Motion to Dismiss ("Li Decl."), ¶ 2.  This time it is a willful violation.  Byers' counsel, who is also counsel for defendant Media Power, violated this rule when he first filed Media Power's motion to dismiss on August 30, 2009.  Counsel was notified of his noncompliance with the local rules on September 25, 2009 when Peak filed its Opposition to Media Power's motion.  *See* Doc. No. 10, at 2.  Byers' counsel filed the instant motion on October 9, 2009, again violating the same local rule requiring meet-and-confer before filing a motion.  Counsel have not had any communications with Peak's counsel so far on any subject matter, let alone meet-and-confer.  Li Decl. ¶ 2.  Counsel should not be allowed to willfully and blatantly ignore the clear and unequivocal language of this Court's Local Rules.

Byers' Motion also violates other local rules.  Local Rule 11-8 requires a table of contents and table of authorities for "[a]ny memorandum of points and authorities or any brief exceeding ten (10) pages in length."  Civ. L.R. 11-8.  The memorandum of point and authorities of the instant motion is 11-page long without table of content or table of authorities.

Byers, in an apparent attempt to shorten the overall length of the memorandum, has chosen to use what appears to be twelve (12) point font size.  This violates Civil Local Rule requiring "14-point or larger" type face.  Civ. L.R. 11-3.1.1.  Byers' memorandum also periodically and inexplicably switches line spacing to single spacing throughout the document.  *See* Mo. at 3:24-4:4, 7:1-15, 9:25-11:28.

Given Byers' complete disregard for this Court's Local Rules, especially where Byers' counsel had previous knowledge of the violation and did nothing to correct the error in the instant motion, this Court should deny Byers' Motion to Dismiss.

/ / /

### III.   STATEMENT OF FACTS

#### A.   Byers Is Personally Involved in Media Power's Extensive Contacts with California

Byers is the founder of Media Power.  Declaration of William E. Wheeler, Ph.D. in support of Plaintiffs' Opposition to Defendant Byers' Motion to Dismiss ("Wheeler Decl. II"), ¶ 2.  Byers owns approximately 60% of the shares of Media Power and is considered to be the majority stockholder of Media Power.  Supplemental Declaration of J. James Li, Ph.D. in Support of Plaintiffs' Amended Opposition to Defendant Kenneth W. Byers' Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer Venue ("Suppl. Li Decl.") ¶ 2, Ex. A (Byers Depo. Tx.).  He has been one of three members of Media Power's Board of Directors since its inception in 1995.  *Id.* at ¶ 3, Ex. A (Byers Depo. Tx.).  Byers has the full control of Media Power's Board and management, including the period of time from 2003 to 2007 when he was not the President and CEO of Media Power.  Wheeler Decl. II, ¶ 2.  Since August 2007, Byers has resumed his position as Media Power's President and CEO.   Suppl. Li Decl. ¶ 4.  According to Christopher Homer, Media Power's designated witness and its Director and Shareholder, the President and CEO of Media Power oversees the daily operation of the company.  *Id.* at ¶ 5, Ex. B (MPI Depo. Tx.)  Indeed, Byers admitted that he has weekly meetings with Media Power's management.  Suppl. Li Decl. ¶6, Ex. A (Byers Depo. Tx.).

Byers was personally involved in Media Power's advertisement and sales of GSP.  He met Dr. Wheeler several times, starting in 2003 when Dr. Wheeler was still residing in California.  At the time, Byers was the Chief Executive Officer of Media Power.  *See* Li Decl. Ex. A.  All of the meetings between Byers and Dr. Wheeler were for the purpose of discussing the collaboration between Media Power and Dr. Wheeler, through Ken Wright's companies, Incubation or NPBI.  Wheeler Decl. II, ¶ 2.  Byers was heavily involved in the projects selling GSP *Id.* ¶ 3.  As early as 2003, when Byers was still Media Power's CEO, Media Power was footing the bills for shooting

SV 346511841v1

commercial videos sponsored by Defendant Ken Wright. *Id.* ¶ 4.  The only available direct mail advertisement of GSP by Media Power were conducted in April and June of 2008, many months after Byers resumed his position of President and CEO in Media Power.

The alleged wrongdoings of Media Power was mostly under Byers's direction and/or management.  Byers started the GSP project for Media Power.  Much of the alleged infringing activities by Media Power was conducted after 2007 when Byers came back to control the day-to-day operations of Media Power as its President.  *Id.* For example, the website gspdiet.com, and goldstandardprotein.com, which are two of the most egregious infringing websites, were first registered in 2008 by Media Power, after Byers' comeback to the Media Power's daily operation.  See Li Decl. Ex. B. Further, the website wheelerdiet.com, another of the egregious websites, was first registered by Byers himself in 2006 when he was supposedly out of Media Power's daily operations.  Li Decl. Ex. C.  The direct mail advertisement campaign that targeted California residents were conducted in April and June of 2008, after Byers resumes his position of President and CEO of Media Power.  The most egregious infringing conducts of Media Power is, after the lawsuit filed by Peak against Wright's company and especially after the instant lawsuit, Media Power decided to continue selling GSP.  As the current President and CEO of Media Power, Byers cannot disclaim his personal involvement in Media Power's decision to ignore Peak's claim of IP infringement.

Byers is also the sole shareholder and President of MPDirect.  As discussed in Peak's Amended Opposition to Media Power's Motion to Dismiss, it is highly likely that MPDirect is the parent company of Media Power and should be deemed so as an evidentiary sanction against Media Power.  For the purpose of this brief, it does not make any difference whether MPDirect is really the parent company of Media Power. The fact that it has been handling all GSP shipments, receiving GSP directly from California manufacturer and shipping GSP directly to California consumers strongly

support Byers' minimum contract with California, regardless of whether MPDirect is the parent company of Media Power.

Thus, contrary to Byers' statement in his declaration, he was intimately involved in the alleged wrongdoings of Media Power since at least 2003 and throughout the years, even at the time while he was not Media Power's President. Media Power's extensive contacts with California was under Byers' management and direction, which alone should prove California's personal jurisdiction over Byers.

### B.   Byers' Personal Involvement in Marketing GSP Products

Other than Media Power and its affiliates' websites, there are more than a dozen of websites in this country that once sold GSP products and claimed affiliation with Dr. Wheeler. Declaration of Linda J. Yeager-Wheeler in Support of Plaintiffs' Opposition to Defendant Byers' Motion to Dismiss ("LYW Decl.") ¶ 2, Ex. A. All of the websites were registered by Byers. *Id.* For example, the website www.opamerca.com sold GSP under Dr. Wheeler's name as recently as June 3, 2009. Li Decl. Ex. D. Byers is listed by the international domain name registration as the registrant of opamerica.com, with an email address of "kwbyers@mpline.com." Li Decl. Ex. E.

Three of Byers' websites were blatantly "specialized" in GSP and Dr. Wheeler, as indicated by their URLs: www.gspdiet.com, www.goldstandardprotein.com and www.wheelerdiet.com. The registrant for gspdiet.com was listed as "Ken Byers," with Byers' office address in Clearwater, Florida. Li Decl. Ex. B. The domain name goldstandardprotein.com was first created on "26-Jun-2008" which was after Byers came back to be Media Power's President. *Id.* The registrant for wheelerdiet.com is listed as "Media Power" with Mr. Byers' email address "kwbyers@mpline.com". *Id.* Ex. C. Weelerdiet.com was first created on September 14, 2006. The domain name goldstandardprotein.com was first registered on December 27, 2002 to MediaPower with Byers' email. *Id.* Ex. J.

/ / /

Both gspdiet.com and wheelerdiet.com once sold GSPs and both claim their connections with Dr. Wheeler.    One printout from wheelerdiet.com shows that the website is centered around Dr. Wheeler.  *Id.* Ex. F.  The website shows, without authorization, Dr. Wheeler's picture and biography, with the following statements to blatantly claim the website as Dr. Wheeler's:

> Dr. Wheeler advises professional athletes about nutrition, supplementation and wellness. … This resulted in numerous requests for one on one consultations with captains of industry, celebrities, and political dignitaries.
>
> An outgrowth of this work is the WEBSITE. Which is meant to help the impossible task of communicating with the tens of thousands seeking his professional advice, although he still consults one on one.
> …
> His own line of products, Nature's Gold Standard, utilize the very same proprietary formulation and nutritional experience that has helped the professional athlete, or world business leader.
>
> With so many requests for assistance in losing weight, Dr. Wheeler created the now famous, "Gold Standard Protein" weight loss shakes. As he likes to say, he "put the science in a can", yet knowing the human factor, set the industry standard for taste, and for satiety.

Li Decl. Ex. F.

Other than Media Power, Byers also controls several other companies that are or were involved in selling the infringing products GSP.  For example, Byers is listed as the registered agent and manager for Old Tampa Bay Trading Company LLC ("OTBTC").  Li Decl. Ex. G.  OTBTC used to sell GSP using Dr. Wheeler's name from its website, www.oldtampabay.com.  LYW Decl. ¶ 4.  Although OTBTC's website has recently been shutdown, a cached keyword page from the website www.keywordspy.com shows OTBTC's listing of "dr wheeler gold standard" at "http://www.oldtamppabay.com/…."  Li Decl. Ex. H, item No. 4.  Byers himself is listed as the registrant of the oldtampabay.com domain name.  *Id.* Ex. I.

/ / /

### C.   Facts Should Be Deemed Admitted Pursuant to Evidentiary Sanction Against Byers

As fully discussed in Peak's Motion for Evidentiary Sanction, the following facts should be deemed admitted and true for the purpose of deciding personal jurisdictional matters.

#### 1.   Byers' Various Companies Sold GSP and Byers Was Personally Involved in the GSP-Related Activities of these Companies

Peak presented evidence in its original opposition papers that Byers is the founder and chief executive of various companies that were involved in marketing and sales of GSP, including MPDirect, SunTime, OTBTC, and opamerica.com.  To Peak's dismay, Byers refused to answer any questions on Suntime, OTBTC and opamerica.com, and only answered a small fraction of questions on MPDirect.  Suppl. Li Decl. ¶ 7; Declaration of J. James Li, Ph.D., in Support of Peak's Motion for Evidentiary Sanctions and for Fees and Costs, ¶¶ 8-10.

Thus, for the purpose of deciding personal jurisdiction, it should be deemed admitted that (1) MPDirect, SunTime, OTBTC, and opamerica.com were engaged direct marketing efforts to consumer, California consumers included, for sales of GSP; (2) Byers was personally in charge of these sales activities as the owner and operator of these companies.

#### 2.   MPDirect Is Media Power's Parent Company

As discussed in the Sanction Motion, the D&B Reports for both MPDirect and Media Power state that Media Power is a subsidiary of MPDirect.  Both Byers and Homer refused to properly answer questions regarding the corporate relationships between MPDirect and Media Power.  It thus should be deemed admitted and true for the purpose of deciding personal jurisdiction that MPDirect owns and controls Media Power.

/ / /

### 3.   GSP and California Are Significant Sources of Income for Byers

Both Byers and Homer declined to provide the documents that prove the percentage of income that Byers derives from selling GSP and the percentage of his come were derived from sales to California residents.

It should be deemed admitted and true that a significant portion of his income and his assets were related to GSP sales and that a significant port of his income are derived from sales from California consumer.

In sum, Byers has been personally involved in many of his companies' GSP sales-related activities related to California and the claims of the case.  He is also involved in the intentional wrongdoings alleged in this case directed at California.

## IV.   <u>ARGUMENT</u>

California has a broad long-arm statute on personal jurisdiction.  "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."  Cal. Code Civ. Proc. § 410.10; see also *Integral Development Corp. v. Weissenbach*, 99 Cal. App. 4th 576 (2002) (California "long arm" statute on personal jurisdiction "manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations of due process").  The due process clause of the Constitution requires that the defendant have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Byers does not dispute that personal jurisdiction could be found by either general or specific jurisdiction, and that the existence of either will be sufficient to sustain the instant action.

An out-of-state defendant may be subject to specific jurisdiction if the following three-part test is met:

(1)     The non-resident defendant must purposefully direct his activities [at] or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)     the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)     the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) , quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987).

In this case, the State of California does have personal jurisdiction over Byers because Byers has had extensive claim-related activities in California, both through his management role in Media Power and his personal involvement in misappropriating the intellectual properties created in California by a California resident.

### A.     Byers Is Personally Involved in Media Power's Wrongdoings Related to California

As discussed in Peak's amended opposition to the co-pending motion to dismiss filed by Media Power, there is no question that the State of California has personal jurisdiction over Media Power.  *See* Doc. 10.  Media Power procured its infringing products from California vendors and specifically targeted California residents to market the infringing products.  *See* Doc. No. 10 at 8-9.  Byers is the centerpiece of Media Power's California-related activities.  Wheeler Decl. II ¶¶ 2-4.  He is the founder and President of Media Power and MpDirect.  Id. ¶ 2; Byers Decl. ¶¶ 3, 4.  Byers personally registered two outright infringing websites, gspdiet.com and wheelerdiet.com.  Li Decl. Exs. B, C, J..  He also personally met with Dr. Wheeler regarding marketing possibilities of GSP.  Wheeler Decl. II ¶¶ 2, 3.

Thus, Byers is personally involved in Media Power's infringing activities.  His significant roles in these infringing activities prove his minimum contact with California for the purpose of finding personal jurisdiction.  There are two aspects of his

contacts with California: (1) purposefully direct his wrongdoing at California, and (2) purposefully avail himself of the protection of California law and the privilege of doing business in California. Either of the two aspects alone should be sufficient to prove the requisite minimum contact.

### 1. Byers Has Directed His Alleged Intentional Wrongdoings at California

It is indisputable that the intellectual property at issue in this case were created in California by Dr. Wheeler when he was still a California resident. Declaration of William Wheeler in Support of Plaintiffs' Opposition to Media Power's Motion to Dismiss. ("Wheeler Decl."), Doc. No. 11. It is also indisputable that the infringing products, which include GSP and other products sold using Dr. Wheeler's trademark and publicity right, were made in and shipped from California. *See* Doc. No. 10, 3:22-4:10. Byers' companies, including Media Power, MPDirect, OTBTC, and opamerica.com, have sold GSP and used Dr. Wheeler's intellectual properties without authorization, which are the key wrongdoings alleged in this case. As the founder and top executive of these companies, Byers has personally participated in these intentional wrongdoings directed at the forum state--California. He started to meet with Dr. Wheeler in 2003 when Dr. Wheeler was still living in California and he was still Media Power's CEO. Wheeler Decl. II, ¶ 2; Li Decl. Ex. A. He started to finance the video advertisement production of Ken Wright's projects with Dr. Wheeler from at least 2003. Wheeler Decl. II, ¶ 3. He personally registered more than a dozen of websites selling GSP using Dr. Wheelers' name---especially the three egregious domain names: goldstandardprotein.com, gspdiet.com, and wheelerdiet.com---all without Dr. Wheeler's authorization. The requisite minimum contact is thus found as Byers "purposefully direct[ed] his activities [at] … the forum or resident thereof." *Schwarzenegger*, 374 F.3d at 802.

It is true that at the time of this lawsuit Dr. Wheeler has moved to Arizona. This fact, however, does not change the analysis because all the crucial events occurred

11                                       Case No. CV-09-4933 AG (Shx)

1   when he was a California resident.  *See* Wheeler Decl. ¶ 2.  The trade secrets at issue

2   were created in the Los Angeles area pursuant to California trade secret law.  *Id.*   The

3   limited license of Dr. Wheeler's publicity right to Ken Wright was entered in

4   California.  *Id.* ¶¶ 3, 4.   The purported license of the publicity right to Media Power

5   was also entered in California with the explicit selection of California law for

6   construing the license. Media Power's Motion to Dismiss (Doc. No. 7), Ex. A,  p. 4.

7
8
### 2.  Byers Has Purposefully Availed Himself of the Protection of California law and the Privilege of Doing Business in California.

9

10   Byers is the founder and President of Media Power and MPDirect and also

11   Media Power's former CEO.  Wheeler Dec. II, ¶ 2; Byers Decl.¶¶ 3, 4;  Li Decl. Ex. A.

12   Through Media Power, Byers has availed himself of the protection of California law.

13   Media Power's license with Incubation for Dr. Wheeler's IP was explicitly governed

14   by California law.  Doc. No. 7, Ex. A at p. 4.  Media Power actively targeted

15   California residents to market the infringing products.  Declaration of Stan Gardner in

16   Support of Plaintiff's Opposition to Media Power's Motion to Dismiss ("Gardner

17   Decl."), Doc. No. 12.  Byers himself attended trade shows in California on behalf of

18   Media Power.  Wheeler Decl. ¶ 12.  As the founder and President of Media Power,

19   Byers undoubtedly has benefited from Media Power's California-directed activities.

20
### 3.  Byers' Reliance on the Corporate Shield Theory Is Unavailing

21   Part of Byers' argument is that his contacts with California were not in his

22   individual capacity, but rather his business capacity.  *See* Byers Decl., ¶ 6.  This

23   reasoning directly contradicts the established law.  The United States Supreme Court

24   rejected such an argument more than 20 years ago in *Keeton v. Hustler Magazine, Inc.*,

25   465 U.S. 770 (1984) ("we today reject the suggestion that employees who act in their

26   official capacity are somehow shielded from suit in their individual capacity.").

27   California Court of Appeal has also spoken on the issue.  In *Taylor-Rush v.*

28   *Multitech Corp.*, 217 Cal. App. 3d 103 (1990), the court reversed the trial court's

finding of lack of personal jurisdiction based on the so-called "fiduciary shield." *Id.* at 117-18. *Taylor-Rush* found personal jurisdiction against the individual defendants "where the defendants were not mere employees." *Id.* at 118. In this case, at the time of the wrongdoings, Byers was the head of Media Power. He is also the registrant for many websites that directly market the infringing products at issue, including three explicitly infringing websites, gspdiet.com, goldstandardprotein.com, and wheelerdiet.com.

Therefore, because Byers' corporate officer status does not shield him from his personal liability, there is no reason why Byers should be allowed to shield himself from personal jurisdiction just because he acted in his capacity as an officer of Media Power.

## B.   The Exercise of Jurisdiction over Byers is Reasonable.

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 476, quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945). Under this "reasonableness" prong, defendants have the burden to prove, by compelling evidence, it is unreasonable for the Court to assert personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003); *Integral Development Corp.*, 99 Cal. App. 4th at 591 ("Once a plaintiff has shown the requisite minimum contacts to support jurisdiction, the burden shifts to defendant to show jurisdiction is not reasonable.").

The reasonableness determination turns on a balancing test based on a multiple of factors, none of which is dispositive on itself. *Roth v. Garcia Marquez,* 942 F.2d 617, 623 (9th Cir.1991). The factors to be considered include: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of

the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487-1488 (9th Cir. 1993), quoting *Paccar Int'l, Inc. v. Commercial Bank of Kuwait*, 757 F.2d 1058, 1065(9th Cir. 1985).

### 4.   Extent of Byers' Interjection into California's Affairs

Byers' purposeful contacts with California, through Media Power and other companies under his control, are extensive and closely related to the claims of the case. Media Power entered into a contract with Incubation, which contract is central to this entire dispute. See Media Power's Motion, Ex. A.  This contract has remained in effect after Byers took over as President of Media Power in the Fall of 2007.  Media Power has been receiving GSP products and other products from Big Train, the California manufacturer.  See Perez Decl., ¶ 5, Ex. B.  While Byers was the President of Media Power, Media Power has been receiving GSP products from California manufacturers, and has directly marketed the infringing products to California residents through direct mail advertising campaigns.  See Gardner Decl., Doc. No. 12, ¶¶ 1-3, Exs. A and B.  By its own admission, Media Power has been selling various products in California under Byers' presidency.  *See* Media Power's Motion to Dismiss, Doc. No. 7,  at 5:3-4.

### 5.   Burden on Byers of Defending in California

Under California law, the burden on a foreign defendant is not a significant factor for the reasonableness analysis.  "The fairness requirement of *International Shoe*, written over 50 years ago, must be assessed in the context of our age of global business and modern technology." *Integral Development Corp.* 99 Cal. App. 4th at 592.  "[I]n this era of fax machines and discount air travel, requiring [a foreign defendant] to litigate in California is not constitutionally unreasonable." *Id.* quoting *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

Byers' and Media Power's extensive business dealings in California are proof that it is not a prohibitive burden for Byers to litigate in this State. Media Power acts as the exclusive distributor for Incubation (*see* Media Power's Motion to Dismiss, Ex. A), which distributorship continued in effect after Byers took over as President of Media Power, Byers travels frequently to California for trade shows (*see* Wheeler Media Power Decl., ¶ 6; Byers Decl., ¶ 6), Media Power routinely receiving goods from California manufacturers (*see* Perez Media Power Decl., ¶¶ 4-5, Exs. A and B), which receiving of goods has continued since at least the Fall of 2007 when Byers took over as President of Media Power, Media Power conducts radio and television advertisements in California (*see* Media Power's Motion to Dismiss at 5:4 and Byers Media Power Decl., ¶ 8), and Media Power, at the direction of Byers directly solicited sales of the infringing products from California residents through a direct mailing campaign. *See* Gardner Media Power Decl., ¶¶ 2-3. Media Power also contractually agreed to be bound by California law in its agreement with Incubation. See Media Power's Motion to Dismiss, Ex. A. This agreement to be bound by California law has remained in effect since Byers took over as President of Media Power in the Fall of 2007. Thus, this factor does not render it unreasonable for California to exercise personal jurisdiction over Byers.

### 6.   Extent of Conflict with Sovereignty of Defendant's State

There is no evidence that there is any conflict with Maine or Florida. The contract between Media Power and Incubation, a key piece of evidence in this case, that was continued when Byers took over as President of Media Power in the Fall of 2007, contains a choice of law clause stating that the agreement would be governed by and construed in accordance with California law. Thus, this factor is largely neutral to the issue of reasonableness.

### 7.   California's Interest in Adjudicating the Dispute

California has a substantial interest in adjudicating this dispute. The alleged infringing products are manufactured in California by Big Train. A Californian,

Ken Wright, is the key party to all of Byers' and Media Power's alleged wrongdoings and also a co-defendant in this case.  Media Power has targeted Californians with the infringing products and indeed sold much of the products to California residents.

Furthermore, the forum state has a compelling interest to protect its citizen's intellectual property.  *Integral Development. Corp.*, 99 Cal. App. 4th at 592 ("The enactment of the Uniform Trade Secrets Act in California indicates a strong legislative intent to protect California residents against the misappropriation of their trade secrets."); *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1336 (9th Cir. 1984) ("Arizona also has an interest in protecting its companies from trademark infringement abroad to preserve the state's economic vitality.")  The trade secrets and trademarks at issue in this case were created in California by Dr. Wheeler who resided in California during the relevant time period.  Wheeler Media Power Decl., ¶ 2.  The fact that Dr. Wheeler happens to have moved to another state should not in any way attenuate California's interest in protecting these intellectual property rights created in California by a California resident.

Thus, the factor of the forum state's interest weights heavily in favor of the reasonableness of California's personal jurisdiction over Byers.

**8.     Most Efficient Judicial Resolution of the Controversy**

Most evidence in this case will come from California, because the trade secrets were created here, the infringing products are manufactured here, and all the relevant contracts and licenses were made here.  Key witnesses, including Ken Wright and his employees, Stan Gardner, Big Train, Jason Saunders, and Gen X, are all located in California.  The only witnesses located in Maine or Florida will be Byers and Media Power's own witnesses.  Thus, this factor tips in favor of California's exercising jurisdiction over Byers.  At the very least, this factor does not in any way render the personal jurisdiction unreasonable.

/ / /

/ / /

9.     **Importance of the Forum to Plaintiffs' Interest in Convenient and Effective Relief**

Plaintiffs choose California as the forum for the purpose of obtaining convenient and effective relief.  California is where almost everything relevant to this action took place and thus is the most convenient and effective forum to obtain evidence in terms of subpoenaing third parties for documents and testimonies.  Litigating in Florida or Maine would greatly inconvenience Plaintiffs who are an individual and a small company.  This factor thus does not support a finding of unreasonableness for California to exercise personal jurisdiction over Byers.

10.     **Existence of an Alternative Forum**

Assuming *arguendo* that alternate forums are available, this is but one factor of seven that the Court should consider.  This factor alone can never render it unreasonable for the forum state to exercise personal jurisdiction. *See Gates Learjet Corp.*, 743 F.2d at 1333-1334 (court exercised jurisdiction over defendant, despite Plaintiff's failure to prove the unavailability of an alternative forum, holding that "[i]n light of the other factors, however, this factor is not dispositive.")

Therefore, there is no evidence that California's exercise of personal jurisdiction over Byers is in any way unreasonable.  Byers has failed to sustain his burden of proof on this issue.

**C.     The Central District Of California Is The Proper Venue To Litigate This Claim.**

An action may be transferred to another District "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  As demonstrated in Peak's Opposition to Media Power's Motion to Dismiss, Doc. No. 7, 9:11-13:4, in the context of discussing the reasonableness of exercising personal jurisdiction, the convenience of the parties and witnesses is best served by litigating this case in California; so are the interests of justice.  While Byers and his witnesses may not reside in California, Byers' co-defendant, Ken Wright, who is the key link

1    between Media Power, Byers, and Peak, does reside in California.  A substantial

2    number of third-party witnesses (including all manufacturers of GSP) also reside in

3    California, as does a substantial amount of the documentary evidence at issue.  Most of

4    the facts giving rise to the claims of the case occurred in California, including creation

5    of the IPs at issue, licensing and sublicensing of the IPs, and manufacturing of the

6    infringing products. *See*  Peak's Opposition to Media Power's Motion to Dismiss, at

7    Sec. III, and evidence cited therein.  Thus, the convenience of the parties and

8    witnesses, and the interest of justice are all best served by litigating the case before this

9    Court.

10        Without stating its reason, Byers made its transfer arguments on the assumption

11   that this is a case founded solely on diversity subject matter jurisdiction and relied

12   solely on 28 U.S.C. § 1391(a).  This argument is made despite the fact that Peak amply

13   demonstrated in its opposition to Media Power's Motion to Dismiss, that jurisdiction is

14   based on the federal question doctrine as well as on diversity of citizenship.  In fact, as

15   the Complaint itself explicitly states,

16        Pursuant to 15 U.S.C. 1125, this Court has subject matter jurisdiction
          over the false advertisement claims under the federal question doctrine.
17        Pursuant to 28 U.S.C. 1367, this Court has supplemental jurisdiction
          over the claims for misappropriation of right of publicity, trademark
18        infringement, defamation and false light, trade secret misappropriation,
          and unfair competition.
19

20   Complaint, 2:2-6.

21        Contrary to Byers' assertion, Section 1391(a) does not apply to this case because

22   it is for cases where the subject matter jurisdiction "is founded only on diversity of

23   citizenship." 28 U.S.C. § 1391(a).  The applicable venue statue here is 28 U.S.C.

24   § 1391(b) which provides:

25        A civil action wherein jurisdiction is not founded solely on diversity
          of citizenship may, except as otherwise provided by law, be brought
26        only in (1) a judicial district where any defendant resides, if all
          defendants reside in the same State, (2) a judicial district in which a
27        substantial part of the events or omissions giving rise to the claim
          occurred, or a substantial part of property that is the subject of the
28        action is situated, or (3) a judicial district in which any defendant may

---

18                                          Case No. CV-09-4933 AG (Shx)

be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

The first option under 28 U.S.C. § 1391(b) is not possible, as not all defendants reside in the same state. Both Media Power and Ken Wright reside in this judicial district. *See* 28 U.S.C. 1391(c) (for venue purpose, a corporation "is deemed to reside in any judicial district in which it is subject to personal jurisdiction"). However, Byers resides in Florida. Thus, not all defendants reside in the same State.

Under the second option of 28 U.S.C. § 1391(b), the Central District is the appropriate venue because, as demonstrated above, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, including creation and licensing of the IPs at issue, manufacturing of the infringing products, and sales and marketing of the infringing products. *See* Peak's Opposition to Media Power's Motion to Dismiss, Doc. No. 7, Sec. III, and evidence cited therein.

If this Court for some reason finds that venue cannot be based on Section 1391(b)(2), the Central District would still be the appropriate venue under Section 1391(b)(3). For venue purpose, both Media Power and Ken Wright reside in this District and thus "may be found" in this District. Thus, this District is the proper venue for this action.

### D.    Byers' Citations To Non-Existent Declaration Paragraphs Should Be Disregarded By This Court

In the instant Motion to Dismiss, Byers attempts to support certain alleged facts by citation to paragraphs from the Declaration of Byers that simply do not exist. Byers claims that Peak erroneously claims that Byers personally negotiated Media Power's contract with Ken Wright, and that Peak erroneously claimed that Byers personally registered the websites in Peak's complaint. See Motion to Dismiss at 6:19-21 and 8:9-12. In support of Byers' claims, citation is made to paragraph 10 of the Byers Declaration. Not only is there no paragraph 10 to the Byers Declaration, but the

Declaration only has 7 paragraphs and none of those paragraphs make any mention of a claim supporting the alleged facts about Media Power's contract with Ken Wright or registration of the websites from Peak's complaint. Thus, such claims should be disregarded for a complete lace of evidence.

**E.      In the Alternative, Limited Discovery Should be Ordered For Determining Jurisdiction**

The Ninth Circuit has held that on a motion to dismiss, the Court has discretion to permit limited jurisdictional discovery without a full prima facie showing of personal jurisdiction by the plaintiffs. *eMag Solutions, LLC v. Toda Kogyo Corp.*, 2006 WL 3783548, *2 (N.D. Cal. 2006); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135 (9th Cir. 2003). "[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dept. of Interior,* 342 F.3d 1080, 1093 (9th Cir. 2003) (citation omitted).

It is Peak's strong belief that Byers has sufficient contact with California so as to warrant the exercise of personal jurisdiction over him. However, if this Court were to find the evidence insufficient to move jurisdiction, the Court should at least allow Peak to conduct a limited discovery.

**V.      <u>CONCLUSION</u>**

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss as well as deny the requested change of venue, for non-compliance with the plain language of this Court's Civil Local Rules, despite ample notice of the non-compliance. Alternatively, this Court should continue the hearing on the Motion to Dismiss in order to allow Peak to conduct jurisdictional discovery as to Byers' contacts with the State of California.

1

2

Dated:  April 28, 2010                    GREENBERG TRAURIG, LLP

3

4                                          By:_____/s/_____
                                               J. JAMES LI
5                                              Attorneys for Plaintiffs
                                               PEAK PERFORMANCE NUTRITION,
6                                              LTD., and WILLIAM E. WHEELER, Ph.D

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANT BYERS' MOTION TO DISMISS
SV 346511841v1